BioFuels Automation, Inc.,

       Plaintiff,

v.                                          **ORDER**

Kiewit Energy Company
and Delta-T Corporation,

       Defendants.

    C. John Jossart, Esq., James J. Kretsch, Jr. and Kretsch & Gust, 5151 Edina Industrial Boulevard, Suite 650, Edina, MN 55439, counsel for plaintiff.

    Curtis D. Smith, Esq. and Moss & Barnett, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, counsel.

This matter is before the court on the motion of defendant Kiewit Energy Company ("KEC")[1] to dismiss for lack of personal jurisdiction. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants KEC's motion.

**BACKGROUND**

This diversity action arises out of KEC's construction of an ethanol plant in Indiana in 2007 ("the Project"). (Gage Aff. ¶ 3.)

---

[1] KEC is a Delaware corporation with its principal place of business in Houston, Texas. (Gage Aff. ¶ 2.) KEC provides engineering, procurement and construction services to the oil, gas and refining industries. (Id.) KEC is an independent, wholly-owned subsidiary of Kiewit Corporation. (Id.)

On September 25, 2007, KEC entered into a contract with defendant Delta-T Corporation ("Delta-T")[2] wherein Delta-T agreed to procure materials for the Project. (Id. ¶ 4; Compl. ¶ 9.) In turn, on July 19, 2008, Delta-T entered into a contract with plaintiff BioFuels Automation, Inc. ("BioFuels")[3] wherein BioFuels agreed to sell control valves and other products to Delta-T for use in the Project. (Compl. ¶ 7.)

In August 2008, KEC, Delta-T and BioFuels entered into a joint check agreement (the "Agreement") wherein KEC agreed to pay for the products BioFuels supplied to Delta-T for the Project. (Eschenbacher Aff. ¶ 2, Ex. 1; Gage Aff. ¶ 5.) The Agreement stated that KEC would deliver to Delta-T joint checks payable to Delta-T and BioFuels. (Eschenbacher Aff. ¶ 2, Ex. 1.) Delta-T would then endorse and deliver the checks to BioFuels. (Id.) In accordance with the Agreement, on August 21, 2008, KEC sent two checks to Delta-T at its office in Virginia, payable to Delta-T and BioFuels. (Id. ¶ 4, Ex. 2; Gage Aff. ¶ 6.) BioFuels claims that KEC later stopped making payments for the products it supplied. (Eschenbacher Aff. ¶ 6.)

---

[2] Delta-T is a Virginia corporation engaged in ethanol technology design with its principal place of business in Williamsburg, Virginia. (Compl. ¶ 4.)

[3] BioFuels is a Minnesota corporation with its principal place of business in Plymouth, Minnesota. (Compl. ¶ 2.) BioFuels provides materials, services and equipment to the renewable fuels industry. (Id.)

2

BioFuels brought this action on March 2, 2010, asserting claims against KEC and Delta-T[4] for breach of contract, unjust enrichment, replevin, conversion, account stated and estoppel. Specifically, BioFuels asserts that KEC and Delta-T owe it $224,920.24 for products they received from BioFuels. KEC now moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2).

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by

---

[4] On May 10, 2010, the Clerk of Court entered default judgment in favor of BioFuels against Delta-T in the amount of $225,080.94 pursuant to Federal Rule of Civil Procedure 55(b)(1). (Doc. No. 13.)

3

the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citation and quotation omitted). A defendant should reasonably anticipate being haled into court in a forum state within which it "purposefully avail[ed] [it]self of the privilege of conducting activities, ... thus invoking the benefits and protections of [the state's] laws." Id. (citation omitted). A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents

4

and (5) the convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The court gives significant weight to the first three factors. See id.

**II. Jurisdictional Discovery**

As a preliminary matter, the court considers BioFuels's request for additional jurisdictional discovery. BioFuels seeks information about the contacts of KEC's parent corporation, subsidiaries, divisions and affiliated companies with Minnesota. The court may allow jurisdictional discovery if the plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations" of the defendant's minimum contacts with the forum state. Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008). In other words, a plaintiff's request for jurisdictional discovery must be "specifically targeted to flesh out connections already shown to exist," not merely an attempt "to cast a wide net for potential contacts with the forum state." Greenbelt Res. Corp. v. Redwood Consultants, LLC, 627 F. Supp. 2d 1018, 1028 (D. Minn. 2008).

"Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." Epps. v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003) (citations omitted); Lakota Girl Council, Inc. v. Havey Fund Raising Mgmt., Inc., 519 F.2d 634, 637 (8th Cir. 1975). In such situations, "a court's

5

assertion of jurisdiction is contingent on the ability of the plaintiff[] to pierce the corporate veil." Epps, 327 F.3d at 649 (citation omitted). Under Minnesota law, the court applies the "instrumentality" or "alter ego" approach to pierce the corporate veil, examining the "reality and not [the] form, [of] how the corporation operated and the individual defendant's relationship to that operation." Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979); Assoc. of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, 553 N.W.2d 446, 449 (Minn. Ct. App. 1996) (applying Victoria Elevator to parent-subsidiary relationship).

BioFuels asserts three arguments in support of its position that personal jurisdiction exists over KEC due to the activities of its related entities in Minnesota. First, BioFuels contends that KEC and its related entities all use the same brand name - "Kiewit." Second, BioFuels alleges that KEC's financial solvency depends on the activities of its related entities. Last, BioFuels claims that KEC's related entities have completed certain construction projects in Minnesota and have submitted bids to obtain additional work in the state. In response, KEC maintains that it is an independent, wholly-owned subsidiary of Kiewit Corporation. KEC also notes that it has already provided all relevant jurisdictional discovery to BioFuels. BioFuels alleges, however, that KEC did not produce information regarding the contacts of its related entities with Minnesota.

After a review of the facts currently before the court, the court determines that only an attenuated relationship exists between KEC and its related entities. This relationship is insufficient to pierce the corporate veil and subject KEC to personal jurisdiction in Minnesota based on the activities and contacts of its related entities. Accordingly, information on KEC's related entities is irrelevant to this case, and the court denies BioFuels's request for additional jurisdictional discovery.

**III. General Personal Jurisdiction**

BioFuels first argues that the totality of KEC's contacts with Minnesota support a finding that general personal jurisdiction exists. General jurisdiction exists if a defendant has "carried on in the forum state a continuous and systematic, even if limited, part of its general business." Steinbuch, 518 F.3d at 586. If a court has general jurisdiction over a defendant, "the alleged injury need not have any connection with the forum state." Id. However, BioFuels has not shown that KEC carries on continuous and systematic business in Minnesota. Rather, the facts indicate that KEC does not own offices or real property in Minnesota, is not licensed to do business in Minnesota and does not transact business in the state. (Gage Aff. ¶ 8.) Therefore, the court determines that it lacks general personal jurisdiction over KEC.

**IV. Specific Personal Jurisdiction**

BioFuels next argues that the court has specific personal jurisdiction over KEC. Specific jurisdiction exists when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within the forum state. St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591 (8th Cir. 2001) (citation and internal quotation marks omitted). According to BioFuels, jurisdiction is proper in Minnesota because KEC proposed, negotiated and executed the Agreement with BioFuels, a Minnesota corporation. BioFuels also notes that it met with KEC to discuss the Agreement, that its representatives traveled to the Project site, and that it shipped products from Minnesota to KEC.

BioFuels's arguments fail for three reasons. First, while the payments KEC made to BioFuels under the Agreement establish a contact between BioFuels and KEC, they do not establish a contact between KEC and Minnesota. See Inst. Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 456 (8th Cir. 1984) ("[I]t is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum.") (citation omitted). Furthermore, the facts indicate that KEC sent the payments to Delta-T in Virginia, not to Minnesota. Second, the activities of BioFuels, including shipping products from Minnesota and visiting the Project site, do not establish contacts between KEC and

8

Minnesota.  See Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 654 (8th Cir. 1982) (unilateral activity of plaintiff insufficient to establish personal jurisdiction over non-resident defendant).  Lastly, absent other contacts with Minnesota, the mere fact that KEC entered into an Agreement with BioFuels, a Minnesota corporation, is insufficient to confer personal jurisdiction over KEC.  See Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 698 (8th Cir. 1995).  In this case, no contacts between KEC and Minnesota exist: the facts indicate that no one from KEC visited Minnesota in connection with the formation or execution of the Agreement or for any other purpose related to the Project.  In light of these circumstances, the court determines that BioFuels has not shown that this action arises out of KEC's activities in Minnesota and, therefore, the court lacks specific personal jurisdiction over KEC.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that KEC's motion to dismiss [Doc. No. 4] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 28, 2010

                                       s/David S. Doty
                                       David S. Doty, Judge
                                       United States District Court